12  481
31  211
12  481
39  193

### FRANK WILSON v. THE STATE

1. APPEAL — PRACTICE.— The proper time for a defendant to give notice
   of appeal to this court is when the lower court has overruled his
   motion for a new trial.   Notice was given in this case after judg-
   ment had been entered and a new trial had been refused, and not
   from an interlocutory order overruling motion for new trial, and
   the attorney general's motion to dismiss the appeal is therefore
   overruled.

2. THEFT — OWNERSHIP.— Where one person owns the property, and
   another person has the possession, charge or control of the same,
   the ownership thereof may be alleged to be in either.

3. SAME.— It is not necessary, in order to constitute theft, that the
   possession and ownership of the property be in the same person at
   the time of the taking.   Possession of the person unlawfully
   deprived of property is constituted by the exercise of actual con-
   trol, care or management of the property, whether the same be
   lawful or not, and proof of either a general or special property in
   the alleged owner will be sufficient.   See the opinion for evidence
   *held* sufficient as proof of ownership.

4. SAME — EVIDENCE.— The want of the owner's consent to the taking
   of the property must, in a trial for theft, be proved like any other
   element of the offense, and cannot be presumed or inferred.   It
   may be proved by circumstantial evidence, but still, it must be
   proved.

5. SAME.— Where one owns the property and another has the possession,
   management, control or care of it, the want of the consent of both
   to the taking must be proved.   And this proof should be made by
   the persons themselves if attainable, and if they are not, their
   absence should be accounted for before the State can be allowed to
   resort to circumstantial evidence.

6. CONCEALING STOLEN PROPERTY.— Before a defendant can be con-
   victed of receiving stolen property, it must satisfactorily appear
   beyond a reasonable doubt: 1, that the property was acquired by
   theft, and 2, that, knowing it to have been so acquired, he con-

cealed the same.   See evidence held insufficient to sustain a convic-
tion for concealing stolen property.

7. VERDICT in a trial for theft which reads, "we the jury find the
defendant *guity* of concealing stolen property, and assess his pun-
ishment in the State prison for two years," is insufficient in that it
does not find the defendant *guilty* of any offense.

APPEAL from the District Court of Wise.   Tried be-
low before the Hon. C. C. POTTER.

The penalty imposed was a two years' term in the pen-
itentiary.   The opinion discloses the nature of the case,
and also the evidence so far as it relates to the want of
consent to the taking of the animal.

With reference to the other questions involved, Gordon
testified that he, Railey, Ray, Piper and McDaniel made
two trips to Black Creek in search of this and two year-
lings of Railey's that had been stolen.   That on their sec-
ond trip, having divided into two parties and traversed
considerable territory, they finally discovered defendant
and one Tate driving three yearlings at a distance of 300
yards.   They were driving the yearlings very fast, going
towards Black Creek bottom.   As the witness and his
party approached the bottom, into which the men and
yearlings had disappeared, one of the other pursuing party
exclaimed: "Come on, here are our cattle, and here are
our men."   The men, whom the witness recognized as the
defendant and Tate, wheeled their horses and ran in an
opposite direction from that they were going with the
yearlings.   The witness, Railey and Ray followed them
as fast as their horses could carry them, but failed to get
sight of them after they crossed a neighboring ridge.   The
yearlings when lost were unmarked, but when recovered
were marked in what the witness understood was Jim
Friel's mark.   The witness saw no more of the defendant
until six months afterwards, when he had been arrested.

Railey, Ray, Piper and McDaniels corroborated the tes-
timony of Gordon.

For the defense, W. W. McDaniels testified that he was at Friel's the Sunday before the defendant was seen with the yearlings, and assisted him to water thirty or forty yearlings which were in Friel's mark. He seemed to own the yearlings. Friel has not been in the county since, but now lives in the "Nation."

The defendant's brother, John Wilson, testified that a few weeks before the excitement about the cattle he heard Friel employ the defendant to work for him with cattle. Friel was to pay the defendant $15 per month, and board. The witness was at Friel's on the day defendant was seen with the cattle, and saw Friel cut three yearlings from a bunch, and heard him tell the defendant and Mack Tate to drive them down to the creek, turn them loose and let them go to h—ll. They started off with the yearlings, and witness saw no more of defendant for about a week. Defendant was then in Friel's employ. On cross-examination the witness denied that he, Mack Tate and Marion Wilson drove these yearlings or any of them from their range about the 1st of January, or at any other time.

The defendant introduced certified copies from the records of Denton county District Court, showing that he had been tried for the theft of Railey's two yearlings and was acquitted.

In rebuttal, Horton testified in substance, that, about the last of December or first of January, he saw John Wilson, Mack Tate and Marion Wilson driving three yearlings answering the description of Railey's and Gordon's, by his house.

*L. C. Sparkman*, for the appellant: The verdict, as returned and filed by the jury, is not sufficient to support the conviction, because it does not find defendant "guilty." 5 Texas Ct. App. 569; 7 Texas Ct. App. 91; 36 Texas, 152.

But it may be contended that inasmuch as the words "of concealing stolen property" follow the word "Guity,"

used in the verdict, same explains and renders the verdict certain, as in the case of Curry, 7 Ct. App., above cited; but in that case the word "Guily" seems to be held sufficient from the reasonable and natural sound of the letters used. In that case the words following "Guily" were as "charged in the indictment." In this case the defendant is charged in the indictment with theft of cattle. The words following "Guity" are "of concealing stolen property." The word "Guity" has no meaning, and is not *idem sonans* with the word guilty. 5 Texas Ct. App. 569. If not, then it cannot be considered in connection with the words following, i. e., "of concealing stolen property." If we leave "Guity" out, then the verdict does not make sense, nor find defendant guilty. If it does not without the word "Guity," then can it be said that this word, which has no meaning, can be used to make that intelligible, which, otherwise, would not be.

The word "Guily" used in the Curry case has a different sound from "Guity," and is of itself *idem sonans* with guilty, while "Guity" cannot be tortured into the same or a similar sound by any known rule of orthography.

I submit that the 5th assignment is well taken. The court charged the jury that circumstantial evidence was sufficient upon which to base a finding of want of consent, etc. In the case of *Erskine* v. *State*, 1 Texas Ct. App. 405, it was held that if property be stolen from the agent of the true owner, want of consent of both agent and owner must be proved, and that this could be done by circumstantial evidence only when direct testimony could not be procured. In *Jackson* v. *State*, 7 Texas Ct. App. 363, it was held that want of consent must be shown by the party himself or his absence accounted for. I ask the court's attention, specially, to the evidence on this point.

There is another view in which the testimony is insufficient to support the verdict. Gordon had no such special property in the animal as would sustain the allegation

that the property was his. Gordon says: "The yearling belonged to Wilkinson," etc. "He had left this one in my charge, that is, he sent me word to look after it for him." I insist that this fails to show that Gordon had such special property in the animal as would have made him responsible to the true owner for its loss. He could not have sued for it. He had no interest in it whatever, but was merely acting as a servant for Wilkinson. 44 Texas, 460. There can be no theft without a trespass. I think this case is not as strong as the case of Blackburn above cited, where it was held that the proof was not sufficient. If it was not Gordon's property that was stolen, then can a conviction for "concealing stolen property" be sustained? The indictment charged him with theft of Gordon's property, under which a conviction could be had for concealing only Gordon's property. Penal Code, art. 743.

*H. M. Holmes*, for the State.

WILLSON, J. A motion to dismiss this appeal is made by the attorney general. The ground of the motion is that the defendant has taken his appeal from an interlocutory order overruling his motion for a new trial, and not from the final judgment. Defendant's notice of appeal was given upon the overruling of his motion for a new trial. The judgment had been previously entered against him, and when his motion for a new trial was overruled the judgment was then a final one so far as that court could make it final, and then was the proper time for the defendant to give notice of appeal to this court. The motion to dismiss the appeal is therefore overruled. The case having been submitted finally, as well as upon the motion to dismiss, we will proceed to consider and determine the questions presented by the record, in so far as we may deem it necessary to so do.

The defendant was indicted for theft of one head of cattle, alleged to be the property of G. C. Gordon. The verdict of the jury as we find it in the record is as follows: "We the jury find the defendant *guity* of concealing stolen property, and assess his punishment in the State prison for 2 years."

The evidence as to the ownership of the animal alleged to have been stolen is, substantially, that it belonged to one Wilkerson, who resided at McKinney in Collin county, Texas; that Wilkerson had some cattle running near G. C. Gordon's, and moved them away from there, leaving still in that range this particular animal; that Wilkerson left this animal in charge of said Gordon,— that is, says the witness Gordon, "He sent me word to look after it for him. I was looking after it for him. I had the yearling and its mother in my pasture awhile, but when it was taken it was running on the range." This was all the evidence showing ownership of the animal to be in G. C. Gordon, as alleged in the indictment. Defendant's counsel insists that there is no sufficient proof of ownership as alleged.

Article 426, Code Crim. Proc., provides that, "Where one person owns the property, and another person has the possession, charge or control of the same, the ownership thereof may be alleged to be in either." Article 728 of the Penal Code provides: "It is not necessary, in order to constitute theft, that the possession and ownership of the property be in the same person at the time of taking;" and art. 729 reads: "Possession of the person so unlawfully deprived of property is constituted by the exercise of actual control, care or management of the property, whether the same be lawful or not." Proof of either a general or special property in the alleged owner will be sufficient. (*Dignowitty* v. *State*, 17 Texas, 521.)

We think the proof of ownership in this case met the requirements of the law. It showed that G. C. Gordon

had the animal in charge, and was actually taking care of it, by watching after it in its accustomed range. The case of *Blackburn* v. *State*, 44 Texas, 475, cited by counsel for defendant upon this point, differs materially from the case at bar. In that case the ownership of the animal was alleged to be in one Esparza, and the proof showed that it was an estray, and that at the time it was taken he had neither a general nor a special property in the animal.

But we think there is an insufficiency of evidence in this case to show a want of consent on the part of Wilkinson, the owner of the animal, to the alleged taking. The want of the owner's consent must be proved like any other element of the offense. It cannot be presumed or inferred. It may be proved by circumstantial evidence, but still it must be proved. (*Garcia* v. *State*, 26 Texas, 209; *Wilson* v. *State*, 45 Texas, 76; *McMahon* v. *State*, 1 Texas Ct. App. 102; *Welsh* v. *State*, 3 Texas Ct. App. 422; *Foster* v. *State*, 4 Texas Ct. App. 246; *Trafton* v. *State*, 5 Texas Ct. App. 480.) Where one person owns the property, and another person has the management, control or care of it, the want of the consent of each of these persons must be proved; and this proof should be made by the persons themselves if they are attainable, and if they are not to be had, their absence should be accounted for before the State can be allowed to resort to circumstantial evidence. (*Erskine* v. *State*, 1 Texas Ct. App. 405; *Jackson* v. *State*, 7 Texas Ct. App. 363.) In the case before us there is no evidence proving or tending to prove a want of consent to the taking of the alleged stolen animal, on the part of Wilkinson, the owner. The only circumstance pointing in that direction is the one that he resided in a distant county at the time of the taking. His absence from the trial was not accounted for; while the evidence showed that he resided within the jurisdiction of the court, and could have been reached by its process.

Before the defendant can be properly convicted of concealing stolen property, it must be made to appear satisfactorily, and beyond a reasonable doubt, 1. That the property was acquired by theft. 2. That, knowing it to have been so acquired, he concealed the same. The evidence in this case tending to prove a guilty knowledge on the part of the defendant is, to say the best of it, meagre, and to our minds insufficient to support the verdict.

Under the authority of *Taylor* v. *State*, 5 Texas Ct. App. 569, the verdict is insufficient. It does not find the defendant *guilty* of any offense.

We think the court erred in overruling the defendant's motion for a new trial.

*Reversed and remanded.*